## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **RONNIE ALLEN BELLAMY JR.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | **Case. No. 20-CV-3229-DDC-ADM** |
| ) | |
| **WARDEN SAM CLINE, et al** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

In accordance with D. Kan. Rules 7.1(a) and 7.6, Defendants Dustin Randolph, John Cannon, Dylan Darter and Alex McCollough, by and through Assistant Attorney General Natasha M. Carter, submit this Memorandum in Support of their Motion to Dismiss, or in the Alternative, for Summary Judgment pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 56. Defendants respectfully request this motion be granted and that this action be dismissed, or in the alternative, judgment be granted in Defendants' favor, stating the following in support.

## NATURE OF CASE AND MATTER BEFORE THE COURT

Plaintiff Ronnie Bellamy is a former inmate of the Hutchinson Correctional Facility ("HCF") who brought this action under 42 U.S.C. § 1983, alleging, among other things, that prison officials failed to protect him from an assault by another inmate in violation of his rights under the Eighth Amendment. Bellamy seeks declaratory and injunctive relief and compensatory and punitive damages. Defendants are entitled to dismissal for several reasons. First, Defendants are entitled to Eleventh Amendment immunity. Second, Defendants are entitled to qualified immunity

as their actions in allegedly failing to prevent an unforeseen attack by inmate Kidd, apparently precipitated by Bellamy threatening inmate Kidd, did not violate Bellamy's constitutional rights, and certainly, no clearly established rights of which they as reasonable officers would have known.

**STATEMENT OF MATERIAL FACTS AS TO WHICH
NO GENIUNE ISSUE EXISTS**

1.     Plaintiff, Ronnie Bellamy, Jr. ("Bellamy"), is a citizen of Kansas who at all times relevant to his Complaint was incarcerated at El Dorado Correctional Facility ("EDCF") in El Dorado, Kansas. KASPER Report, attached as Exhibit A at 2, subject to judicial notice as per Fed. R. Evid. 201 and *O'Toole v. Northrop Grumman Corp*., 499 F.3d 1218, 1225 (10th Cir. 2007).

2.     Bellamy has a diagnosis of Delusional Disorder and is housed in the IRU Program (mental health unit). Doc. 20 at 31; Doc. 24-1 at 35.

*Background*

3.     Bellamy alleges that when Officer Dustin Randolph asked who he wanted to be celled with, he told Officer Randolph "Aaron Wood, #87913, a cellhouse porter and friend." Doc. 23 at 16.

4.     Bellamy alleges that Officer Randolph denied the request and instead placed him into a cell with inmate AJ Kidd ("Kidd"). Doc. 23 at 16.

5.     Bellamy alleges that he "had no knowledge of who [Kidd] was or is." Doc. 24-1 at 12.

6.     Bellamy alleges there was "nothing to indicate that there was a problem or issue." Doc. 24-1 at 12.

7.     Bellamy alleges that he was asleep and woke up to Kidd stabbing him. Doc. 24-1 at 12.

8.     Bellamy's filings allege that Officer Dustin Randolph "had prior knowledge by way of EAI informants – kites" that Kidd was going to cause harm to Bellamy. Doc. 23 at 16.

9.     Bellamy's filings allege that EAI Supervisor John Cannon knew through "letters of information" that Kidd was going to harm Bellamy to obtain his "patch." Doc. 23 at 16.

10. Bellamy previously alleged "Officers --- Chastain and Morgan --- intercepted a kite that told the police[] that Kidd was suppose [sic] to kill me while the police watched." Affidavit of Custodian of Business Records ("Records Affidavit"), attached hereto as Exhibit B, at Bates Stamp 022.

*September 3, 2019 incident*

11. Officer Dylan Darter worked the overnight shift in B1 cellhouse on the evening of September 2, 2019. Declaration of Dylan Darter, attached hereto as Exhibit C, at ¶ 4.

12. Officer Darter conducted counts at approximately 10:30 p.m., 1 a.m., and 3:30 a.m. Darter Decl. at ¶ 5.

13. There were no apparent issues or reports of safety concerns by Bellamy or Kidd during Officer Darter's first count. Darter Decl. at ¶¶ 6-7.

14. During Officer Darter's 1 a.m. count, he stopped at cell B1-210 which housed Bellamy and Kidd because Kidd stated "you better get him out of here before I kill him." Darter Decl. at ¶ 8.

15. When Darter looked up he saw Bellamy on the top bunk covered in blood. Darter Decl. at ¶ 9.

16. Officer Darter called for an Officer Needs Assistance for a physical altercation. Darter Decl. at ¶ 10.

17. Officer Alex McCollough responded to Officer Darter's officer needs assistance call and assisted in restraining Bellamy and escorting him to the medical room. Declaration of Alex McCollough, attached hereto as Exhibit D, at ¶ 5.

18. Bellamy was taken to the medical room at EDCF and then to Wesley Medical Center. Records Aff. at Bates Stamp 008.

19.     After the incident, a central monitor[1] was put into place between Bellamy and Kidd.

Records Aff. at Bates Stamp 020.

20.     After the incident, EAI Supervisor John Cannon attempted to conduct an interview with

Bellamy regarding the incident but he refused. Declaration of John Cannon, attached hereto as

Exhibit E, at ¶ 7.

21.     After the incident Officer Randolph spoke with Kidd regarding the stabbing, and Kidd

advised he stabbed Bellamy because Bellamy continued to threaten Kidd, telling him not to go to

sleep at night. Declaration of Dustin Randolph, attached hereto as Exhibit F, at ¶ 8.

22.     Bellamy did not submit any grievances reporting any safety concerns prior to the

September 3, 2019 incident. Declaration of Darcie Holthaus, attached hereto as Exhibit G, at ¶ 4.

23.     Bellamy's communication logs that maintain records of communications between Bellamy

and KDOC staff make no mention of Bellamy reporting a concern for his safety to Defendants (or

any other staff). Records Aff. at Bates Stamp 021.

24.     There is no credible evidence that Defendants knew of a threat to Bellamy's safety prior to

the September 3, 2019 incident. Darter Decl. at ¶ 16; McCollough Decl. at ¶ 11; Cannon Decl. at

¶¶ 4-5, 8; Randolph Decl. at ¶¶ 9-10.

## QUESTIONS PRESENTED

I.      Does the Eleventh Amendment bar the § 1983 claim against Defendants in their

        official capacities?

II.     Can Bellamy meet his heavy two-part burden in overcoming Defendants' defense

        of qualified immunity since Defendants' actions did not violate Bellamy's

---

[1] A "central monitor" is a practice that ensures separation of inmates when there are safety or security
concerns with housing the inmates in the same facility.

constitutional rights, and certainly no clearly established rights of which Defendants would have known?

## ARGUMENTS AND AUTHORITIES

*Motion to Dismiss Standard*

A defendant may move to dismiss for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Kline v. Biles*, 861 F.3d 1177, 1180 (10th Cir. 2017) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am*., 511 U.S. 375, 377 (1994)). Plaintiff, as the party invoking the Court's jurisdiction, bears the burden of showing its existence. *Id*. "A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Siloam Springs Hotel, L.L.C. v. Century Sur. Co*., 906 F.3d 926, 931 (10th Cir. 2018) (quoting *Basso v. Utah Power & Light Co*., 495 F.2d 906, 909 (10th Cir. 1974)).

*Summary Judgment Standard*

Under Rule 56, summary judgment is required "if, viewing the evidence in the light most favorable to the non-moving party, there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Halley v. Huckaby*, 902 F.3d 1136, 1143 (10th Cir. 2018) (citing *McCoy v. Meyers*, 887 F.3d 1034, 1044 (10th Cir. 2018)). A dispute is genuine if it is "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). Thus, the nonmoving party cannot create a genuine issue of fact by making allegations that are clearly unsupported by the record as a whole. *Scott v. Harris*, 550 U.S. 372, 378-81 (2007). Whether a dispute is material is determined by substantive law. *Adler v. Wal-Mart Stores, Inc*., 144 F.3d 664, 670 (1998) (citing *Anderson*, 477 U.S. at 248).

5

Where there is no genuine dispute of material fact regarding just one of the essential elements a plaintiff must prove, then summary judgment must issue in the defendants' favor. *See Sports Unlimited, Inc. v. Lankford Enters., Inc*., 275 F.3d 996, 999 (10th Cir. 2002) (citing *Adler*, 144 F.3d at 671).

## I.    Bellamy's claims against Defendants in their official capacities are barred by the Eleventh Amendment.

Bellamy's claims against Defendants in their official capacities are barred by the Eleventh Amendment and should be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1). *Fent v. Okla. Water Res. Bd*., 235 F.3d 553, 559 (10th Cir. 2000). "The Eleventh Amendment bars suits in federal court against a nonconsenting state brought by the state's own citizens." *Williams v. Utah Dep't of Corr*., 928 F.3d 1209, 1212 (10th Cir. 2019) (citing *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974)). "This immunity extends to arms of the state and to state officials who are sued for damages in their official capacity." *Id*. (citing *Peterson v. Martinez*, 707 F.3d 1197, 1205 (10th Cir. 2013)). As officials of the KDOC, Defendants share the State's immunity for the claims against them for money damages. *See White v. Colorado*, 82 F.3d 364, 366 (10th Cir. 1996); *Meiners v. Univ. of Kan*., 359 F.3d 1222, 1232 (10th Cir. 2004). Moreover, state officials sued in their official capacities are not "persons" amenable to suit under § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Thus, the official-capacity claims against Defendants must be dismissed.

## II.    Defendants are entitled to qualified immunity as they did not violate the Eighth Amendment or act unreasonably in light of clearly established law.

Qualified immunity "shields public officials from damages actions unless their conduct was unreasonable in light of clearly established law." *Burke v. Regalado*, 935 F.3d 960, 1001-02 (10th Cir. 2019) (quoting *Henderson v. Glanz,* 813 F.3d 938, 951 (10th Cir. 2015)). It "gives

government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Stanton v. Sims*, 571 U.S. 3, 5-6 (2013) (internal citations and quotations omitted).

"A defendant's motion for summary judgment based on qualified immunity imposes on the plaintiff 'the burden of showing both (1) a violation of a constitutional right; and (2) that the constitutional right was clearly established at the time of the violation.'" *Burke*, 935 F.3d at 1002 (quoting *Felders ex rel. Smedley v. Malcom*, 755 F.3d 870, 877 (10th Cir. 2014)). "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Stewart v. Beach*, 710 F.3d 1322, 1331 (10th Cir. 2012) (quoting *Thomas v. Durastanti*, 607 F.3d 655, 669 (10th Cir. 2010)). The court may address either prong of the qualified immunity test first. *Panagoulakos v. Yazzie*, 741 F.3d 1126, 1129 (10th Cir. 2013) (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)). And "[i]f the plaintiff fails to satisfy either part of the two-part inquiry, the court must grant the defendant qualified immunity." *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001) (citing *Albright v. Rodriguez*, 51 F.3d 1531, 1535 (10th Cir. 1995)).

### A. Defendants did not violate the Eighth Amendment.

Prison officials have a duty under the Eighth Amendment to "take reasonable measures to guarantee the safety of the inmates," including "protect[ing] prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984). This does not mean, though, that "every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." *Id*. at 834. Rather, to state a failure-to-protect claim, an inmate

must show both "that he is incarcerated under conditions posing a substantial risk of serious harm" and that the prison officials had a "sufficiently culpable state of mind," i.e., "one of 'deliberate indifference' to [his] . . . safety." *Id.* (quoting *Wilson v. Sieter*, 501 U.S. 294, 302-03 (1991)).

Under the deliberate indifference standard, "a prison official may be held liable . . . only if he knows that [an] inmate[] face[s] a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 847. Thus, "to show that a defendant prison official was deliberately indifferent, the plaintiff must show both 'that the official was subjectively aware of the risk,' and that the official 'recklessly disregard[ed] that risk.'" *Wilson v. Falk*, 877 F.3d 1204, 1209 (10th Cir. 2017) (internal citations omitted) (quoting *Farmer*, 511 U.S. at 828, 836). "Deliberate indifference requires more than a finding of negligence." *Verdecia v. Adams*, 327 F.3d 1171, 1177 (10th Cir. 2003).

For the first component, "[t]he official must actually be 'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Poore v. Glanz*, 724 F. App'x 635, 639 (10th Cir. 2018) (citing *Farmer*, 511 U.S. at 837). "An official's failure to alleviate a significant risk of which he was unaware, no matter how obvious the risk or how gross his negligence in failing to perceive it, is not an infliction of punishment and therefore not a constitutional violation." *Id.* (quoting *Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008)).

As to the second part, "prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause." *Farmer*, 511 U.S. at 845. Therefore, "even if a prison official has knowledge of a substantial risk of serious harm to inmates, he is not deliberately indifferent to that risk unless he is aware of and fails to take reasonable steps to alleviate that risk." *Tafoya*, 516 F.3d at 916. Accordingly, "prison officials . . . may be found free from liability if they

responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844.

### 1. Bellamy cannot establish that he was incarcerated under conditions posing substantial risk of serious harm on September 3, 2019.

Bellamy's claim fails because he cannot meet the objective component required to state a failure to protect claim. Under the objective component, Bellamy cannot overcome summary judgment without admissible evidence that he was incarcerated under "conditions posing a substantial risk of serious harm" prior to the September 3, 2019 incident. Bellamy has presented no such evidence. The mere fact that Bellamy was injured by another inmate is insufficient to demonstrate that he was subjected to conditions posing a substantial risk of serious harm. *Grimsley v. MacKay*, 93 F. 3d 676, 682 (10th Cir. 1996). Bellamy has not presented any evidence that the conditions of his incarceration posed a substantial risk of serious harm on or before September 3, 2019.

With the benefit of hindsight, Bellamy suggests Defendants should have perceived a threat to him from his assailant—even though he himself did not anticipate any attack and was unaware of a risk of serious harm. Doc. 24-1 at 12. Prior to the September 3, 2019 incident, Bellamy never submitted Form 9's, grievances, or written requests to staff members articulating a concern that he was incarcerated under conditions posing a substantial risk of serious harm. Randolph Decl. at ¶ 9; McCollough Decl. at ¶ 10; Darter Decl. at ¶ 15; Holthaus Decl. at ¶ 4. Bellamy did not communicate concerns regarding his safety until after the September 3, 2019 incident. *Id.* Defendants should not be expected to have perceived a threat that Bellamy himself did not. *See Fields v. Huffman*, No. 07-3310-JTM, at 13 (D. Kan. Aug. 20, 2010) (citing *Lane v. Klinger*, No. 01-6144, 25 F. App'x 781, 783, 2001 WL 1580988, at *1 (10th Cir. 2001)). "The mere fact that an assault occurred does not establish the requisite deliberate indifference to Plaintiff's

constitutional rights." *Dumas v. Easter*, No. 19-3247-SAC, 2020 WL 4530473, at *2 (D. Kan. Aug. 6, 2020) (citing *Hovator v. Robinson*, 1 F.3d 1063, 1068 (10th Cir. 1993)).

Bellamy cannot carry his burden to establish an Eighth Amendment violation because he cannot show that any of the Defendants were aware of a substantial risk to his safety. "An official's failure to alleviate a significant risk of which he was unaware, no matter how obvious the risk or how gross his negligence in failing to perceive it, is not an infliction of punishment and therefore not a constitutional violation." *Poore*, 724 F. App'x at 639 (quoting *Tafoya*, 516 F.3d at 916).

## 2. Defendants were not actually aware of a substantial risk of serious harm to Bellamy.

More importantly, even if Bellamy could overcome the objective element, he has presented no evidence to overcome the subjective element. "The subjective component of the deliberate indifference test requires that, before liability can be imposed, a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference"' *Verdecia v. Adams*, 327 F.3d 1171, 1175 (10th Cir. 2003) (internal citations omitted). This subjective standard requires a culpable state of mind on the part of the official. *Gonzales v. Martinez*, 403 F.3d 1179, 1186 (10th Cir. 2005). Deliberate indifference requires more than negligence, and is the "equivalent of acting recklessly." *Farmer v. Brennan*, 511 U.S. 825 (1994). *Farmer* requires evidence which establishes each Defendant's culpable state of mind, i.e., that each defendant disregarded a risk of harm of which he was aware. *Id*. "Prison officials cannot be held liable if they were unaware of even an obvious risk or if they responded reasonably to a known risk, even if the harm ultimately was not averted." *Id*. Deliberate indifference requires "a higher degree of fault than negligence." *Hovater v. Robinson*, 1 F.3d 1063, 1066 (10th Cir.1993). The mere fact that an assault occurred does not establish the requisite deliberate indifference to plaintiff's constitutional rights. *Id*. at 1068. "Nor does an isolated attack

by another inmate demonstrate a failure to protect." *Johnson v. Gilchrist*, No. 09-3063-SAC, 2009 WL 1033755, at \*4 (D. Kan. Apr. 16, 2009).

In the present case, Bellamy's allegations are insufficient to establish deliberate indifference as to Defendants. Defendants were never aware of any threats of physical aggression before the altercation with Kidd and were unaware of the issues regarding Bellamy making threats towards Kidd. Randolph Decl. at ¶ 9; McCollough Decl. at ¶ 10; Darter Decl. at ¶ 15; Cannon Decl. at ¶ 4. Bellamy's allegations to the contrary regarding Officer Randolph and EAI Supervisor John Cannon are completely conclusory. And Bellamy makes *no* allegations specific to the prior knowledge of Officers Darter and McCollough.[2]

Further, Bellamy did not file grievances or communications with staff regarding any fear for his safety prior to September 3, 2019. Given this lack of communication with KDOC staff, normal protocols were implemented in determining Bellamy's cellmate. Officer Randolph reviewed the files of both inmates and did not find any conflicts that would have precluded Bellamy and Kidd from being housed in the same cell. Randolph Decl. at ¶¶ 5-6. The Defendants did not subjectively perceive that Kidd's presence in the cell with Bellamy placed Bellamy at risk.

This Court has rejected failure to protect claims under similar circumstances. *Mohamed v. Tattum*, 380 F. Supp. 2d 1214, 1221-22 (D. Kan. Aug. 4, 2005) is informative. In that case, like this one, the inmate was the victim of an attack by his cellmate. *Id*. at \*1. The inmate alleged the

---

[2] Indeed, as to Defendants Darter and McCullough, Bellamy's Complaint violates the pleading requirements and fails to state a plausible claim. The Complaint is rambling, incoherent, and numerous supplements to the Complaint are illegible due to the handwriting or the quality of the submitted copies. "It is neither the court's nor the [defendants'] role to sift through a lengthy, conclusory and poorly written complaint to piece together the cause of action." *Arena Land & Inv. Co. v. Petty*, 69 F.3d 547 (10th Cir. 1995) (citing *Glenn v. First Nat'l Bank in Grand Junction*, 868 F.2d 368, 371-72 (10th Cir. 1989)). Further, Bellamy fails to allege facts supporting each Defendants' liability. Collective allegations against the state or against "defendants" as a whole are insufficient to meet a plaintiff's burden to provide fair notice of the grounds for the claims made against each party. *See Robbins v. Oklahoma*, 519 F.3d 1242, 1249-50 (10th Cir. 2008).

correctional officer failed to prevent the attack. *Id*. The inmate brought a civil rights complaint

pursuant to § 1983, claiming, among other things, failure to protect. *Id*. The Court found the

inmate's conclusory allegations failed to state a claim of deliberate indifference, stating

> Defendant denies notice or knowledge of such facts. And plaintiff fails to demonstrate a
> genuine issue of fact concerning defendant's knowledge or notice. Although plaintiff
> alleges that defendant "blatantly and deliberately" failed to protect plaintiff after receiving
> notice that his cellmate planned to injure him, plaintiff offers insufficient evidentiary
> support to demonstrate a genuine issue of fact. Housing records give no indication of
> conflict between plaintiff and his cellmate. Plaintiff never approached or informed USPL
> staff of any problems or conflicts between him and his cellmate . . . Moreover, other
> evidence offered by plaintiff is insufficient to demonstrate a genuine issue of fact about
> defendant's notice or knowledge of a threat to plaintiff. Plaintiff does not produce the
> threatening notes that his cellmate allegedly wrote and delivered to defendant. Nor does
> plaintiff show that he has personal knowledge that the cellmate wrote threatening notes
> and/or delivered such notes to defendant.

*Id*. at *6.

The Honorable Eric Melgren of this district made a similar finding in *Miles v. Conrad*, No.

16-3152-EFM, 2019 WL 2208115, at *3-4 (D. Kan. May 22, 2019). In *Miles*, the inmate filed a §

1983 action making similar claims of failure to protect him from an assault by his cellmate. *Id*.

The defendant filed for summary judgment, claiming the inmate did not have any evidence

establishing he was incarnated under conditions posing a substantial risk of serious harm or that

the defendant was deliberately indifferent. *Id*. The court agreed, finding

> Plaintiff cannot establish that Defendant Conrad had subjective knowledge of the risk of
> serious harm. Defendant provides the Court with a copy of the turnkey reports. As noted
> above, the majority of these turnkey reports simply indicate that Plaintiff and his cellmate
> did not get along. None of the turnkey reports indicate aggressive or threatening behavior
> by Sallabreda towards Plaintiff. None of the turnkey reports indicate Plaintiff's concern of
> any violence from Sallabreda. If anything, the last few turnkey communications indicate
> that Plaintiff may harm Sallabedra. The communication on June 7 is ambiguous in that
> Plaintiff states that if Sallabedra continues stealing from him, Plaintiff may end up in the
> hole. The last turnkey communication on June 9 states that Plaintiff may "woop his
> [cellmate's] ass." This communication, however, was sent approximately nine minutes
> before the altercation, and there is no indication that any prison official saw it prior to the
> altercation. In addition, as soon as prison officials got word that a fight was occurring, they
> immediately called a code red and separated the inmates. Finally, Defendant submits

evidence, by way of affidavit from Defendant Conrad, that he did not directly receive any reports from Plaintiff or other inmates that Sallabedra had threatened Plaintiff with physical harm. Defendant Conrad also avers that he was not aware of any such reports. Thus, Defendant could not have subjective knowledge of risk of harm to Plaintiff.

*Id.*

Bellamy's failure to protect claim against Defendants fails for numerous reasons. First, consistent with *Mohamed* and *Miles*, Bellamy cannot prove Defendants drew the required inference. Bellamy makes nothing more than conclusory—and contradictory—assertions that EAI Supervisor John Cannon and Officer Randolph received a "kite" and "letters of information." But Bellamy provides no information about how he has personal knowledge about the alleged "kite" or "letters of information." Bellamy does not state how he was informed of the kite and letters, or even when they were received. Further, his July 20, 2020 email communication to April Paxton states that the alleged kite was received by "Chastain and Morgan"—unknown individuals not named in this lawsuit. Records Aff. at Bates Stamp 022. And each Defendant testified they had no knowledge of a risk of harm to Bellamy prior to the incident, nor did they have knowledge of an alleged "kite." Randolph Decl. at ¶ 9; McCollough Decl. at ¶ 10; Darter Decl. at ¶ 15; Cannon Decl. at ¶ 4. Bellamy's grievance history after the incident establishes that he has a proclivity for complaining and did so numerous times. However, the evidence shows that Bellamy made no reports through the grievance system prior to September 3, 2019 that would have put Defendants on notice that Kidd posed a risk of harm to Bellamy. Indeed, Bellamy concedes that he did not know who Kidd was and was surprised by the aggression when he was stabbed while sleeping. Doc. 24-1 at 12. Likewise, the communication logs that maintain records of communications between Bellamy and KDOC staff make no mention of Bellamy reporting a concern for his safety to Defendants (or any other staff) at any time. Records Aff. at Bates Stamp 021.

Even if Defendants should have perceived some unknown impending threat to Bellamy and did not, that alone constitutes, at most, negligence and does not establish an Eighth Amendment violation. *Smith v. Cummings*, 445 F.3d 1254, 1258 (10th Cir. 2006) ("Mere negligence does not constitute deliberate indifference."). Finally, even if Defendants had been aware of a risk of harm to Bellamy, which is belied by the evidence and denied, Defendants responded reasonably to the risk, and that is all that the Eighth Amendment required them to do. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 847. The evidence shows Officer Darter immediately stepped in to separate the inmates and that a central monitor was placed on Bellamy and Kidd immediately after the incident. Records Aff. at Bates Stamp 020.

In sum, because Bellamy cannot carry his burden of establishing that the Defendants had a subjective belief that Bellamy was at substantial risk of serious harm, and disregarded that belief, the Defendants are entitled to qualified immunity.

### B. Defendants' conduct was not unreasonable in light of clearly established law.

The second part of Bellamy's "heavy two-part burden" to overcome Defendants' assertion of qualified immunity is to show that they violated clearly established law. *Perry v. Durborow*, 892 F.3d 1116, 1120 (10th Cir. 2018). As the Supreme Court recently found "necessary to reiterate," "'clearly established law' should not be defined 'at a high level of generality.'" *White v. Pauly*, 137 S. Ct. 548, 552 (quoting *Ashcroft v. al–Kidd*, 563 U.S. 731, 742 (2011)). Rather, "the clearly established law must be 'particularized' to the facts of the case." *Id*. (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). While "'general statements of the law are not inherently incapable of giving fair and clear warning' to officers . . . 'in the light of pre-existing law the

14

unlawfulness must be apparent.'" *Id*. (internal citations omitted) (quoting *United States v. Lanier*, 520 U.S. 259, 271 (1997); *Anderson*, 483 U.S. at 640).

Bellamy has identified no law that clearly establishes that the Defendants violated the Constitution by any of their alleged actions (or inactions) in this case, i.e., failing to perceive the threat from Kidd when they had no prior subjective knowledge Bellamy was at risk. Further, Bellamy has identified no law that establishes that responding immediately to break up a spontaneous and isolated inmate stabbing is not a reasonable response to a risk of harm to an inmate. In fact, the law is to the contrary. *Verdecia v. Adams*, 327 F.3d 1171, 1176 (10th Cir. 2003) (quoting *Farmer*, 511 U.S. at 844) ("[P]rison officials who lacked knowledge of a risk cannot be said to have inflicted punishment" in a manner that violates the Eighth Amendment."); *Farmer*, 511 U.S. at 847 ("[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted."). The Defendants' alleged actions (or inactions) did not violate clearly established law.

Bellamy cannot meet his burden to establish that it would have been clear to the Defendants that their individual conduct violated Bellamy's rights. The Defendants are entitled to judgment based upon qualified immunity as a matter of law.

## CONCLUSION

Bellamy has failed to allege facts or produce any evidence that the Defendants acted with a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834. There is no evidence to show that, prior to the September 3, 2019, incident that the Defendants had actual knowledge that Bellamy was incarcerated under conditions posing a substantial risk of serious harm or that any Defendants had knowledge of such risk of harm. Likewise, there is no evidence that any Defendant

was aware of any prior animosity or risk presented from Kidd. Rather, Bellamy submitted no Form-9s or grievances to KDOC staff prior to the September 3, 2019 incident. Based upon the arguments and authorities above, the Defendants are entitled to judgment as a matter of law on Bellamy's Eighth Amendment claim.

Respectfully submitted,

OFFICE OF ATTORNEY GENERAL
DEREK SCHMIDT

s/ Natasha M. Carter_____
Natasha M. Carter, KS No. 26074
Assistant Attorneys General
120 SW 10th Avenue, 2nd Floor
Topeka, Kansas 66612-1597
Phone: (785) 296-2215
Fax: (785) 291-3767
Email: natasha.carter@ag.ks.gov
*Attorney for Cannon, Darter,*
*McCollough, and Randolph*

## CERTIFICATE OF SERVICE

I hereby certify that on August 16, 2021 the above and foregoing was filed with the clerk of the court by using the CM/ECF system which will send notice of electronic filing to the following, as well as by U.S. mail, first-class postage prepaid:

Ronnie Allen Bellamy Jr., # 53454
PO Box 2
Lansing, KS 66043
*Plaintiff, pro se*

s/ Natasha M. Carter_____
Natasha M. Carter
Assistant Attorney General