IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **RONNIE ALLEN BELLAMY, JR.,**<br><br>**Plaintiff,**<br><br>v.<br><br>**ALEX MCCOLLOUGH, DUSTIN RANDOLPH, JOHN CANNON, and DYLAN DARTER,**<br><br>**Defendants.**[1] | Case No. 20-3229-DDC-ADM |

## MEMORANDUM AND ORDER

Under the Eighth Amendment, prison officials bear a constitutional duty to protect prisoners from known substantial risks of serious harm.  Plaintiff Ronnie Allen Bellamy, Jr. argues that prison officials at the El Dorado Correctional Facility violated this duty when they failed to protect him from a brutal attack by his cellmate.  Specifically, he alleges his cellmate planned to attack him, defendants knew about the plan, and were thus deliberately indifferent to the risk of attack.  Proceeding pro se,[2] plaintiff brings this lawsuit under 42 U.S.C. § 1983 against defendants in their individual and official capacities.

Defendants move for dismissal of some claims and for summary judgment against others. *See* Doc. 41.  Specifically, defendants:  (1) move to dismiss the official capacity claims based on Eleventh Amendment immunity; and (2) move for summary judgment against the individual

---

[1] The court previously dismissed the lead defendant in this case, Samuel L. Cline, Warden of the El Dorado Correctional Facility, as well as several other defendants.  *See* Doc. 25.  The court thus updates the caption of this case to include only the four remaining defendants.

[2] Because plaintiff appears pro se, the court construes his filings liberally and holds them "to a less stringent standard than formal pleadings drafted by lawyers."  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  But the court can't serve as a pro se plaintiff's advocate.  *See id.*

capacity claims based on qualified immunity.  Because defendants are entitled to both immunities that they assert, the court grants their motion.  It dismisses the official capacity claims against defendants, and grants summary judgment to defendants against the individual capacity claims.[3]  The court explains the reasons for these rulings, below.

**I.     Background[4]**

At all relevant times, plaintiff was incarcerated at the El Dorado Correctional Facility in El Dorado, Kansas.  *See* Doc. 42-2 at 3.  Defendants are four officials who worked there:  Dustin Randolph, who oversaw cell placement; John Cannon, who handled internal criminal investigations; Dylan Darter, a correctional officer; and Alex McCollough, another correctional officer.  *See* Doc. 24 at 6–7.  Plaintiff's claim centers on defendants' alleged failure to protect him from a brutal attack by his cellmate, AJ Kidd, in the early morning hours of September 3, 2019.

---

[3]     In one of his responses to defendants' summary judgment motion, plaintiff asks the court to reconsider its earlier dismissal of four claims after screening under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A.  And, plaintiff requests appointment of counsel.  The court denies both requests.

On the reconsideration part, plaintiff hasn't shown "(1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error or prevent manifest injustice." D. Kan. Rule 7.3(b) (reciting the standard for motions to reconsider in our court).  And on the appointment of counsel request, Magistrate Judge Angel D. Mitchell already denied plaintiff's earlier request for appointment of counsel.  *See* Doc. 48 at 2–4.  This decision denied plaintiff's request but "without prejudice to refiling after the district judge rules on defendants' motion to dismiss" and for summary judgment.  *Id.* at 3–4.  Because the court grants defendants' current motion, it denies plaintiff's request for counsel as moot.

[4]     Because this Order rules a combined motion to dismiss and for summary judgment, two different standards apply to determine the facts controlling the two motions.  The motion to dismiss asserts lack of subject matter jurisdiction based on Eleventh Amendment immunity.  So, the court accepts all the Complaint's jurisdictional allegations as true.  *See Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002).  But for the summary judgment motion, the court doesn't accept the Complaint's allegations as true.  Instead, the court considers only uncontroverted facts.  And, the court recites the controverted facts in the light most favorable to plaintiff, the non-moving party.  *Scott v. Harris*, 550 U.S. 372, 378 (2007).

Around September 1, 2019, defendant Randolph assigned plaintiff and Kidd to the same cell. Doc. 50 at 2 (Pl.'s Statement of Facts ¶ 3); Doc. 42-7 at 3 (Randolph Decl. ¶ 6). Plaintiff avers that, at some point, Randolph had intercepted a "kite"—an informal written message— saying that Kidd was planning to attack plaintiff. Doc. 23 at 16 (Pl.'s Aff.). Plaintiff similarly avers that defendant Cannon also knew about Kidd's planned attack through "letters of information" he had intercepted. *Id.* Both Randolph and Cannon deny intercepting or otherwise receiving such a kite or any other communication about an imminent attack. Doc. 42-7 at 2 (Randolph Decl. ¶ 4); Doc. 42-6 at 2 (Cannon Decl. ¶ 4).

The next night, defendant Darter was working the overnight shift in plaintiff and Kidd's unit. Doc. 42-4 at 2 (Darter Decl. ¶ 4). During his first sweep of the unit, Darter didn't notice any issues between plaintiff and Kidd. *Id.* at 3 (Darter Decl. ¶¶ 5–7). Indeed, plaintiff was asleep. Doc. 50 at 2 (Pl.'s Statement of Facts ¶ 13). Then, during the second sweep of the night, Darter stopped at plaintiff and Kidd's cell. Doc. 42-4 at 3 (Darter Decl. ¶ 8). Kidd told Darter "you better get him out of here before I kill him." *Id.* Darter then looked up at plaintiff in the top bunk of the cell and saw that he was covered in blood. *Id.* (Darter Decl. ¶ 9). Darter called for backup and helped restrain plaintiff and Kidd. *Id.* (Darter Decl. ¶¶ 10–11). Other officials, including defendant McCollough, took plaintiff away for medical treatment. *Id.* (Darter Decl. ¶ 12); Doc. 42-5 at 3 (McCollough Decl. ¶¶ 7–8). But Darter remained with Kidd and conducted a strip search. Doc. 42-4 at 3 (Darter Decl. ¶ 11). After Darter found a 7–8-inch stabbing device, Kidd told Darter he had stabbed plaintiff. *Id.* (Darter Decl. ¶ 13).

Before the attack, plaintiff didn't report any safety concerns about Kidd. *See* Doc. 42-3 at 24 (listing grievances about Kidd after September 3, 2019, but none before that date); *see also* Doc. 42-8 at 2 (Holthaus Decl. ¶ 4) (finding, after review of plaintiff's grievance records, that

3

plaintiff "submitted no grievances" about "safety concerns" before the September 3, 2019 attack). Indeed, plaintiff acknowledges that he didn't know anything about Kidd before he shared a cell with him. Doc. 50 at 2 (Pl.'s Statement of Facts ¶ 5); *see also* Doc. 24-1 at 12 (Pl.'s Aff. ¶ 3) (averring that there was "nothing to indicate that there was a problem or issue" between plaintiff and Kidd). Also, all four defendants deny "knowledge of any threat to [plaintiff] from Kidd, or any other inmate, prior to the September 3, 2019 incident." Doc. 42-4 at 3 (Darter Decl. ¶ 16); Doc. 42-5 at 3 (McCollough Decl. ¶ 11); Doc. 42-7 at 3 (Randolph Decl. ¶ 10); *see also* Doc. 42-6 at 2 (Cannon Decl. ¶ 4). According to all four defendants, plaintiff "never expressed any fear for his safety" to any of them before the attack. Doc. 42-4 at 3 (Darter Decl. ¶ 15); Doc. 42-5 at 3 (McCollough Decl. ¶ 10); Doc. 42-7 at 3 (Randolph Decl. ¶ 9); *see also* Doc. 42-6 at 2 (Cannon Decl. ¶ 4).

After the attack, prison officials placed a central monitor between plaintiff and Kidd, meaning that officials would not house them together in the same cell. *See* Doc. 42-3 at 23.[5] Plaintiff argues that he only learned of this central monitor during this litigation. Doc. 50 at 3 (Pl.'s Statement of Facts ¶ 19). But he doesn't allege that he ever was housed with Kidd again after the attack. *See id.*

## II. Legal Standard

Defendants assert Eleventh Amendment immunity from suit in their official capacity. So, they move to dismiss those official capacity claims for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). At the same time, they assert qualified immunity against the individual

---

[5] Also, defendant Cannon declared that he attempted to interview plaintiff after he was attacked, so that plaintiff could bring criminal charges against Kidd. *See* Doc. 42-6 at 3 (Cannon Decl. ¶ 7). But, Cannon declared, plaintiff refused to speak with him. *Id.* Plaintiff disputes this assertion, arguing that Cannon "never spoke a single word" to him. Doc. 50 at 3 (Pl.'s Statement of Facts ¶ 20). While controverted, this fact is immaterial to plaintiff's claim.

capacity claims. On these claims, they move for summary judgment under Fed. R. Civ. P. 56. The court thus recites the standards for motions under both Rule 12(b)(1) and Rule 56.

Under Rule 12(b)(1), a defendant may move the court to dismiss for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "Federal courts are courts of limited jurisdiction and, as such, must have a statutory basis to exercise jurisdiction." *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002). Federal district courts have original jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States or where there is diversity of citizenship. 28 U.S.C. §§ 1331–32. "'A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking.'" *Siloam Springs Hotel, L.L.C. v. Century Sur. Co.*, 906 F.3d 926, 931 (10th Cir. 2018) (quoting *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974)). The party invoking federal jurisdiction bears the burden to prove it exists. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

Under Rule 56, summary judgment is appropriate when the moving party demonstrates "no genuine dispute" about "any material fact" and that the moving party is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When the court applies this standard, it views the evidence and draws reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). But the court "need not make unreasonable inferences or adopt one party's version of the facts if the record doesn't support it." *Harte v. Bd. of Comm'rs*, 864 F.3d 1154, 1173 (10th Cir. 2017). An issue of "material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party" on the issue. *Anderson v.*

5

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And, an issue of fact is "material" if it has the ability to "affect the outcome of the suit under the governing law[.]" *Id.*

The party moving for summary judgment bears the initial burden of showing "the basis for its motion[.]" *Celotex Corp.*, 477 U.S. at 323. A summary judgment movant can satisfy this burden by demonstrating "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. If the moving party satisfies this initial burden, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quotation cleaned up). To satisfy this requirement, the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324 (quotation cleaned up). When deciding whether the parties have shouldered their summary judgment burdens, the court's "function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

### III.     Analysis

Plaintiff's lone remaining claim in this § 1983 suit is an Eighth Amendment failure to protect claim. Specifically, plaintiff alleges that defendants were deliberately indifferent to a substantial risk of serious harm: an allegedly premediated attack by plaintiff's cellmate. Plaintiff seeks declaratory and injunctive relief, as well as compensatory and punitive damages from defendants. He sues them both in their official and individual capacities.

In response, defendants assert both Eleventh Amendment immunity and qualified immunity. They also argue that plaintiff fails to establish a genuine dispute of material fact whether defendants violated his Eighth Amendment rights. They're right. So, the court

6

dismisses the official capacity claims for damages and declaratory relief because Eleventh Amendment immunity bars those claims. And it grants summary judgment to defendants on the rest of plaintiff's claims, based on qualified immunity and plaintiff's failure to establish a triable issue whether defendants violated his Eighth Amendment rights. The court explains these rulings, below.

  A.  **Eleventh Amendment Immunity**

Defendants argue that Eleventh Amendment immunity bars plaintiff's claims against them in their official capacities. The Eleventh Amendment generally bars suits against states and their agencies based on their sovereign immunity. *Levy v. Kan. Dep't of Soc. & Rehab. Servs.*, 789 F.3d 1164, 1168 (10th Cir. 2015) ("The ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court." (quoting *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001))). "This immunity extends to arms of the state and to state officials who are sued for damages in their official capacity." *Williams v. Utah Dep't of Corr.*, 928 F.3d 1209, 1212 (10th Cir. 2019); *see also Ellis v. Univ. of Kan. Med. Ctr.*, 163 F.3d 1186, 1196 & n.13 (10th Cir. 1998) (explaining that the Eleventh Amendment barred plaintiffs' §§ 1981, 1983, and 1985 claims for money damages against state officials in their official capacities). The Eleventh Amendment also bars claims for "retrospective declaratory relief" against state officials. *Meiners v. Univ. of Kan.*, 359 F.3d 1222, 1232 (10th Cir. 2004). But it "does not prohibit a suit in federal court to enjoin prospectively a state official from violating federal law." *Id.* (citing *Ex Parte Young*, 209 U.S. 123, 159–60 (1908)). "Once effectively asserted, Eleventh Amendment immunity constitutes a bar to the exercise of federal subject matter jurisdiction." *Williams*, 928 F.3d at 1212 (quotation cleaned up).

Here, the Complaint asserts that defendants—in their roles as employees of the Kansas Department of Corrections—were "acting under the color of state law" at "the time the claim(s) alleged in this complaint arose[.]" Doc. 24 at 6–7. In response, defendants argue that they—as state agents—are entitled to Eleventh Amendment immunity for the claims asserted against them in their official capacities. *See, e.g.*, *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997) ("It has long been settled that the [Eleventh Amendment's] reference to actions 'against one of the United States' encompasses not only actions in which a State is actually named as the defendant, but also certain actions against state agents and state instrumentalities." (quoting U.S. Const. amend. XI)); *Clark v. Stovall*, 158 F. Supp. 2d 1215, 1225 (D. Kan. 2001) (holding that Eleventh Amendment immunity extended to an entity sued "exclusively in its capacity as [an] agent acting under color of state law"). Plaintiff never responds to defendants' Eleventh Amendment immunity argument. His silence concedes that the Eleventh Amendment bars his official capacity claims against defendants. Given his implicit concession and the case authorities cited above, the court dismisses plaintiff's claims against defendants in their official capacities for monetary damages and declaratory relief.

### B. Qualified Immunity

Next, defendants assert qualified immunity on plaintiff's damages claims against them in their individual capacities. Qualified immunity "'shields public officials from damages actions unless their conduct was unreasonable in light of clearly established law.'" *Burke v. Regalado*, 935 F.3d 960, 1001–02 (10th Cir. 2019) (quoting *Henderson v. Glanz*, 813 F.3d 938, 951 (10th Cir. 2015)). An official sued in his individual capacity under § 1983 is entitled to qualified immunity unless plaintiff can show "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct."

*Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  The court has discretion to determine "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Plaintiff asserts that defendants violated his Eighth Amendment rights by failing to protect him from his cellmate's allegedly premediated attack.  "Under the Eighth Amendment, prison officials have a duty to 'provide humane conditions of confinement,' including 'taking reasonable measures to guarantee the safety of inmates.'"  *Requena v. Roberts*, 893 F.3d 1195, 1214 (10th Cir. 2018) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)) (quotation cleaned up).  "This duty includes 'a duty to protect prisoners from violence at the hands of other prisoners.'"  *Id.* (quoting *Farmer*, 511 U.S. at 833).  Our Circuit has recognized that "prison inmates have a clearly established Eighth Amendment right to be protected from substantial risks of assault."  *Wilson v. Falk*, 877 F.3d 1204, 1209 (10th Cir. 2017) (citing *Howard v. Waide*, 534 F.3d 1227, 1242 (10th Cir. 2008)).  Because this right is clearly established, plaintiff can overcome defendants' assertion of qualified immunity if he establishes that they violated his Eighth Amendment rights by failing to protect him from his cellmate's attack.  *See id.*

To establish this specific Eighth Amendment violation—*i.e.*, a failure to protect claim—plaintiff must show a triable issue about two things.  *First*, plaintiff must show "'that the conditions of his incarceration present an objective substantial risk of serious harm[.]'"  *Requena*, 893 F.3d at 1214 (quoting *Howard*, 534 F.3d at 1236).  Often, courts have found this objective prong met "where prison officials disregard repeated warnings of danger to a particular prisoner and continually refuse to make the situation safer[.]"  *Grimsley v. MacKay*, 93 F.3d 676, 681 (10th Cir. 1996).  *Second*, plaintiff must show that "'prison officials had subjective

9

knowledge of the risk of harm[.]'" *Requena*, 893 F.3d at 1214 (quoting *Howard*, 534 F.3d at 1236). To meet this subjective prong, plaintiff must show "deliberate indifference"—a standard akin to recklessness. *Farmer*, 511 U.S. at 837, 839–40. That is, plaintiff must show that an official was "aware of facts from which" he could draw an inference "that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. Defendants contend that plaintiff fails to satisfy either the objective or subjective prongs. The court agrees with them.

*First*, plaintiff fails to create a genuine dispute on the objective prong of the analysis, *i.e.*, that the conditions of his incarceration posed a substantial risk of serious harm. To be sure, plaintiff sustained a serious harm. There's no dispute about that. He was stabbed multiple times in his sleep by his cellmate, Kidd. But the fact of an injury alone "is not nearly enough to satisfy" the objective prong for a failure to protect claim. *Grimsley*, 93 F.3d at 682; *see also Farmer*, 511 U.S. at 834 (explaining that "not . . . every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety"). And plaintiff fails to adduce any evidence that there was a substantial risk of serious harm *before* Kidd attacked him.

It's undisputed that plaintiff never submitted a grievance about Kidd. Nor did he otherwise tell defendants that he feared attack. He even acknowledged that he didn't know anything about Kidd before officials placed them in the same cell together. Indeed, the record contains no evidence that plaintiff had interacted with Kidd before the attack. Thus, there's no basis for a reasonable jury to conclude that plaintiff faced a substantial risk of serious harm before Kidd attacked him. *See Miles v. Conrad*, No. 16-3152-EFM, 2019 WL 2208115, at *3 (D. Kan. May 22, 2019) (finding no genuine issue of fact on the objective prong of a failure to protect claim where plaintiff "did not communicate concern that the conditions [of incarceration]

10

posed a substantial risk of serious harm"), *aff'd*, 805 F. App'x 607 (10th Cir. 2020); *see also Lane v. Klingler*, 25 F. App'x 781, 783 (10th Cir. 2001) (concluding plaintiff did "not demonstrate a substantial risk of serious harm" because he "did not know his assailant before the attack, nor did he allege that he had previously been threatened by him").

To make it clear, the court understands that "an affected inmate need not provide written notice of a threat in order to trigger [an] official's duties under the Eighth Amendment." *Howard*, 534 F.3d at 1237 (citing *Farmer*, 511 U.S. at 849). So, the court rejects defendants' argument that they couldn't have anticipated a threat that plaintiff himself didn't perceive. *See* Doc. 42 at 9. As our Circuit has explained, "[r]egardless of how prison officials become subjectively aware of a substantial risk of serious harm to an inmate—and indeed, even in situations where the prisoner himself remains oblivious to the potential harm—the Eighth Amendment requires them to respond reasonably." *Howard*, 534 F.3d at 1237. But here, the record contains no objective evidence from which officials could ascertain a substantial risk of serious harm to plaintiff. And a reasonable juror couldn't find otherwise. So, plaintiff fails to create a genuine dispute of material fact on the objective prong of his failure to protect claim.

*Second*, plaintiff also fails to create a genuine dispute about the subjective prong— defendants' deliberate indifference to a substantial risk of harm. To start, plaintiff doesn't allege any facts about Darter or McCollough's subjective knowledge of a planned attack. Without evidence or even any allegations "isolat[ing] the allegedly unconstitutional acts" of those defendants, plaintiff can't establish an Eighth Amendment violation against them. *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008). So, they're entitled to qualified immunity.

For defendants Randolph and Cannon, plaintiff alleges more. Specifically, he alleges that Randolph and Cannon intercepted kites saying that Kidd planned to attack plaintiff. And so,

11

plaintiff contends, they each knew about a substantial risk of serious harm and were deliberately indifferent in disregarding that risk. In response, Randolph and Cannon deny receiving any kite about Kidd's alleged plans. They also deny knowledge about any imminent attack on plaintiff or about any other risk of danger that plaintiff faced.

Plaintiff fails to dispute Randolph and Cannon's denials with any admissible evidence. He doesn't produce the alleged kites that Randolph and Cannon allegedly intercepted. Nor does he provide any personal knowledge about who wrote the kites, what the kites said, or how Randolph and Cannon intercepted them. Plaintiff also doesn't provide evidence from anyone else with personal knowledge about the kites or any other communication where Kidd or anyone else divulged plans to attack plaintiff. Plaintiff only provides unsupported allegations. And allegations lacking any supporting evidence won't suffice to create a genuine dispute of material fact. *See* D. Kan. Rule 56.1(d) ("Affidavits or declarations must be made on personal knowledge and by a person competent to testify to the facts stated that are admissible in evidence.").[6]

Comparing this case to two others from our court buttresses this conclusion. In *Mohamed v. Tattum*, 380 F. Supp. 2d 1214, 1221 (D. Kan. 2005), Judge Robinson found that a plaintiff had failed to create a genuine factual dispute on the subjective prong even though plaintiff produced affidavits from three fellow inmates averring that they saw threatening notes written by plaintiff's attacker before the attack occurred. Because "none of the affiants state[d] that he witnessed plaintiff's cellmate deliver the notes to defendant[,]" the affidavits didn't raise a factual issue about defendant's knowledge of a substantial risk of serious harm. *Id.* Also,

---

[6]   Plaintiff does provide two Affidavits from two other inmates. *See* Doc. 52 at 3–6. But those Affidavits, while based on the Affiants' personal knowledge, don't address plaintiff's failure to protect claim. Instead, those Affidavits discuss an incident between plaintiff and a group therapy leader that occurred sometime after Kidd had attacked plaintiff. So, they don't create a genuine dispute of material fact about Randolph or Cannon's deliberate indifference to a substantial risk of harm.

plaintiff failed to adduce any other evidence that created a genuine dispute about defendant's subjective knowledge. There weren't any records of conflict between the plaintiff and his cellmate before the attack. *Id.* And plaintiff "never approached or informed [prison] staff of any problems or conflicts between him and his cellmate." *Id.* So, Judge Robinson granted summary judgment to defendant.

Judge Melgren reached a similar conclusion in *Miles v. Conrad*, No. 16-3152-EFM, 2019 WL 2208115 (D. Kan. May 22, 2019). There, the summary judgment record established that plaintiff had filed several reports about his cellmate in the days before his cellmate assaulted him. *Id.* at *1–2. But, Judge Melgren found, these reports "simply indicate[d] that Plaintiff and his cellmate did not get along." *Id.* at *3. "None of the . . . reports indicate[d] aggressive or threatening behavior by [the cellmate] towards Plaintiff." *Id.* (emphasis omitted). Nor did any of the "reports indicate Plaintiff's concern of any violence from" his cellmate. *Id.* (emphasis omitted). Also, it was undisputed, defendant "did not directly receive any reports from Plaintiff or other inmates that [the cellmate] had threatened Plaintiff with physical harm." *Id.* at *4. Thus, defendant "could not have [had] subjective knowledge of risk of harm to Plaintiff." *Id.* So, Judge Melgren granted summary judgment to defendant. *Id.* at *5. And the Tenth Circuit affirmed. *See Miles v. Conrad*, 805 F. App'x 607, 611–12 (10th Cir. 2020).

In short, the *Mohamed* and *Miles* plaintiffs had adduced at least *some* evidence of their claims, but they still didn't survive summary judgment. Necessarily then, plaintiff's claims here—unsupported as they are by any evidence—can't survive summary judgment either.

Recognizing this deficiency, plaintiff requests a *Martinez* report.[7] He contends that a *Martinez* report will produce video and audio evidence of his attack. But, as our Circuit has

---

[7] "When the pro se plaintiff is a prisoner, a court-authorized investigation and report by prison officials (referred to as a *Martinez* report) is not only proper, but may be necessary to develop a record

explained, *Martinez* reports "facilitate th[e] screening process" of a complaint under 28 U.S.C. §§ 1915(e)(2)(B), 1915A(a)–(b). *Rachel v. Troutt*, 820 F.3d 390, 393 n.1 (10th Cir. 2016). "District courts order *Martinez* reports to aid in identifying and clarifying the issues pro se plaintiffs raise in their complaints, to assist in the court's broad reading of pro se litigants' pleadings, and to supplement plaintiffs' descriptions of the practices they contend are unconstitutional." *Jennings v. Yates*, 792 F. App'x 606, 609 (10th Cir. 2019). Thus, a *Martinez* report isn't relevant, where, as here, the court already has screened the Complaint and determined that it asserted at least one plausible claim for relief. *See Pemberton v. Dedeke*, No. 21-3152-SAC, 2021 WL 5038782, at *2 (D. Kan. Oct. 28, 2021) ("Ordering a *Martinez* report is in the court's discretion." (citing *Barrett v. Philpot*, 356 F. App'x. 193, 199 (10th Cir. 2009))).

But, liberally construed, plaintiff's request for video and audio evidence of his attack implicates Fed. R. Civ. P. 56(d). That rule allows a court to defer deciding a motion for summary judgment when "a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition[.]" Fed. R. Civ. P. 56(d). Our Circuit imposes specific requirements for Rule 56(d) Affidavits. *See Adams v. C3 Pipeline Constr. Inc.*, 17 F.4th 40, 65 (10th Cir. 2021) ("In the Tenth Circuit, a non-movant requesting additional discovery under Rule 56(d) must specify in the affidavit (1) the probable facts not available, (2) why those facts cannot be presented currently, (3) what steps have been taken to obtain these facts, and (4) how additional time will enable the party to obtain those facts and rebut the motion for summary judgment." (quotation cleaned up)). Plaintiff, who proceeds pro se, hasn't produced an Affidavit meeting those requirements. In any event, the evidence plaintiff

---

sufficient to ascertain whether there are any factual or legal bases for the prisoner's claims." *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991) (citing *Martinez v. Aaron*, 570 F.2d 317, 318–19 (10th Cir. 1978) (en banc) (per curiam)).

seeks—video and audio evidence of his attack—isn't relevant to the issue here: whether defendants subjectively knew about Kidd's allegedly planned attack and disregarded that substantial risk of serious harm to plaintiff. Thus, the evidence plaintiff seeks can't overcome summary judgment. So, the court denies plaintiff's liberally construed request under Rule 56(d).

In short, plaintiff fails to create a genuine dispute of material fact on either the objective or subjective prongs of his Eighth Amendment failure to protect claim. Thus, defendants are entitled to qualified immunity and summary judgment against plaintiff's damage claims against them in their individual capacities.

### C. Plaintiff's Remaining Requests for Relief

There's one last issue to address. To the extent defendants' Eleventh Amendment and qualified immunities don't apply to plaintiff's remaining claims for declaratory and injunctive relief, defendants are entitled to summary judgment on those claims as well.[8] That's because plaintiff fails to establish a genuine issue of material fact on either the objective or subjective prongs of his Eighth Amendment claim, as explained above. Because plaintiff didn't establish a genuine issue whether defendants had violated his constitutional rights, he isn't entitled to the

---

[8] Plaintiff requested monetary damages, a declaratory judgment, and injunctive relief against defendants in their individual and official capacities.

For the individual capacity claims, qualified immunity shields defendants from the damages claim. *Burke*, 935 F.3d at 1001–02. And, while our Circuit hasn't addressed the question, several "courts have concluded that there is no basis for suing a government official for declaratory and injunctive relief in his or her individual or personal capacity." *BEG Invs., LLC v. Alberti*, 34 F. Supp. 3d 68, 80 (D.D.C. 2014) (quotation cleaned up) (collecting cases).

For the official capacity claims, defendants are immune from the claims for damages and from a declaratory judgment under the Eleventh Amendment. *Meiners*, 359 F.3d at 1232. So, that leaves only the requested injunctive relief against defendants in their official capacity. *See id.* (explaining that the "Eleventh Amendment does not prohibit a suit in federal court to enjoin prospectively a state official from violating federal law" (citing *Ex Parte Young*, 209 U.S. 123, 159–60 (1908))).

injunctive or declaratory relief he seeks.  So, the court grants summary judgment to defendants on plaintiff's remaining requests for relief.

## IV. Conclusion

For these reasons, the court dismisses plaintiff's claims for damages and declaratory relief against defendants in their official capacities because Eleventh Amendment immunity bars the claims.  And the court grants summary judgment to defendants against the rest of plaintiff's claims, based on both qualified immunity and his failure to establish a genuine issue whether defendants violated his Eighth Amendment rights.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment (Doc. 41) is granted.  Specifically, the court:  (1) dismisses plaintiff's official capacity claims for damages and declaratory relief; (2) grants summary judgment against plaintiff's official capacity claim for injunctive relief; and (3) grants summary judgment against all of plaintiff's individual capacity claims.

**IT IS FURTHER DIRECTED BY THE COURT THAT** the Clerk enter Judgment in defendants' favor against plaintiff's claims and close the case.

**IT IS SO ORDERED.**

**Dated this 1st day of March, 2022, at Kansas City, Kansas.**

                                              **s/ Daniel D. Crabtree**
                                              **Daniel D. Crabtree**
                                              **United States District Judge**